

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

December 3, 1973

The Honorable Robert S. Calvert
Comptroller of Public Accounts
State Finance Building
Austin, Texas

Opinion No. H- 173

Re: Various questions con-
cerning the application
and interpretation of
Articles 6. 01, et seq.,
Vernon's Texas Civil
Statutes, Taxation-
General, the Motor
Vehicle Sales and Use Tax

Dear Mr. Calvert:

Your opinion request raises several questions relative to the Motor Vehicle Retail Sales and Use Tax (Articles 6. 01, et seq., Vernon's Texas Civil Statutes, Taxation-General).

You advise us that on November 16, 1971, an entity we shall call the Marketing Corporation took title to a 1972 automobile which it had acquired from the manufacturer. The principal, if not the only, business of the Marketing Corporation was to transfer possession of automobiles to licensed dealers for leasing and rental to the general public. Marketing Corporation had a contract covering such transactions with another company which we shall call Sales, Inc., No. 1.

From November 16, 1971, to June 13, 1972, title to the 1972 automobile remained in Marketing Corporation, although Sales, Inc., No. 1, had possession and was leasing and renting the automobile to the general public.

On June 13, 1972, Marketing Corporation assigned title to the automobile to Sales Inc., No. 1, which, on the same date, assigned it to a third company we shall call Sales, Inc., No. 2.

Sales, Inc., No. 2, in turn sold the automobile at retail to a bona fide purchaser.

On June 14, 1972, Marketing Corporation applied for a title to a new automobile, listing the 1972 automobile as a trade-in and seeking to deduct its value from the value of the new automobile in determining the sales tax, if any, that was due under the provisions of § D(3) of Article 6. 03, V. T. C. S., Taxation-General, which provides:

p. 795

"Any person purchasing motor vehicles for
resale at retail who has obtained a certificate of
title to a motor vehicle which he uses for personal
or business purposes may deduct the fair market
value of such vehicle from the 'total consideration'
when such person purchases another motor vehicle
upon which he obtains a certificate of title as a sub-
stitute vehicle for personal or business use and the
original vehicle is offered for sale at retail. "

Your first question asks whether the Assessor-Collector has authority to
take a sales affidavit without the signature of an appropriate officer of Mar-
keting Corporation.

Article 6.05 requires that each transaction involving the sale or exchange
of a motor vehicle be accompanied by an affidavit from the purchaser and the
seller outlining the terms of the transaction.   The statute provides:

"Where any party to a sale, exchange, even
exchange or gift is a corporation, the president,
vice president, secretary, manager or other
authorized officer of the corporation shall make
the affidavit for the corporation. "

Since the Marketing Corporation is a party to two of the transactions described
in your letter, we believe that, in connection with these two transactions, the
affidavit must be signed by "the president, vice president, secretary, manager
or other authorized officer of the" Marketing Corporation, in conformance with
the exact wording of the statute and that the Assessor-Collector may not accept
it without such signatures.

Your second question inquires:

"2.   Where title is taken in the name of [ the
Marketing Corporation] , does Article 6.03, Section
D(3) apply on a replacement value? "

We assume that when you refer to title being taken in the name of the Marketing
Corporation, you had in mind the second vehicle that the Marketing Corporation
acquired.

Section D(3) of Article 6.03 which we have quoted above, provides for a deduction from the total consideration used to compute the sales or use tax. It was enacted in 1971 by the 62nd Legislature and has not been the subject of judicial interpretation.

Your letter indicates that the Marketing Corporation did not purchase the vehicle for resale at retail ; that it did not use the vehicle for personal or business purposes; that the second vehicle was not acquired as a substitute vehicle for personal or business use; and that the original vehicle was not offered for sale at retail. Assuming these facts to be true, the deduction provided in the statute would not be applicable.

Your third question, completely separate from the factual situation outlined in your letter, asks:

"3.    Where title is held in the name of the dealer or seller and is used unregistered in accordance with Article 6686, Revised Civil Statutes of Texas, for reference Article 6.03, Section B, does Attorney General Opinion No. M-141 apply on motor vehicles that are used by the dealer, his employees, and members of family. Also, does it apply to registered vehicles used before sale from someone other than the dealer. "

Article 6.03B defines the term "retail sale" as follows:

"The term 'retail sale' as herein used shall include all sales of motor vehicles except those whereby the purchaser acquires a motor vehicle for the exclusive purpose of resale and not for use and shall not include those operated under and in accordance with the terms of Article 6686, Revised Civil Statutes of Texas, 1925, as amended. "

Attorney General opinion No. M-141 construed this provision in October, 1967, before the reference to Article 6686, V. T. C. S. , was added by the 60th Legislature, effective October 1, 1968. Article 6686, V. T. C. S. , pertains to dealers' licenses and regulates those instances when automobile dealers may operate unregistered vehicles through the use of such dealers' temporary licenses.

Some of the conclusions in Attorney General Opinion M-141 are affected by this amendment. For instance, the conclusion in the opinion that "demonstrators" are taxable to dealers would no longer be correct because § 4(a) of Article 6686 allows unregistered vehicles to be used as demonstrators.

However, with specific reference to your question, the last paragraph of § 4 of Article 6686 provides in part: "Such tags shall not be used to operate vehicles for the personal use of a dealer or his employees."

Of course, as pointed out in Attorney General Opinion M-141, whether a vehicle is being used personally is a question of fact. However, it is plain that a vehicle employed for the personal use of the dealer, his employees, his or their families, or of someone other than the dealer is subject to the tax. Such use with dealers' licenses is prohibited by the above-quoted provisions of Article 6686. This would be true even though the same automobile is also being used for proper purposes specified in Article 6686 for unregistered vehicles.

Again, as in Attorney General Opinion M-141, we suggest that you clarify these matters by rules and regulations promulgated under the authority of Article 6.02, V. T. C. S. , Taxation-General.

## SUMMARY

1. When a corporation sells or exchanges a motor vehicle, the sales affidavit required by Article 6.05, V. T. C. S., Taxation-General, must be executed by an authorized officer of the corporation.

2. A corporation that does not purchase motor vehicles for resale at retail but is engaged in wholesale leasing and sales of automobiles is not entitled to deduct the value of such automobiles as provided in Article 6.03 D(3), V. T. C. S. , Taxation-General, when it sells a leased automobile and acquires another for the same purpose.

3. An automobile devoted wholly or partially to the personal use of a dealer, a dealer's employees or their respective families,

or to someone other than the dealer is subject to the Motor Vehicle Sales and Use Tax.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee